[Civ. No. 36446. Second Dist., Div. Five. July 31, 1970.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
AMOS MARSHALL ARKETA et al., Real Parties in Interest.

## COUNSEL

Evelle J. Younger, District Attorney, Harry Wood and Eugene D. Tavris, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Herbert G. Blitz, Richard S. Buckley, Public Defender, James L. McCormick, William K. Rasmussen, Harry W. Brainard, Deputy Public Defenders, Shay & Stirling, M. David Stirling and Manuel Valenzuela for Real Parties in Interest.

## OPINION

SELBER, J.* — People seek relief by way of mandate pursuant to section 1538.5 subdivision (o) of the Penal Code from an order of the respondent court suppressing certain evidence in a criminal action against defendants, Gonzales, Rubio, Esparza and Arketa, who are the real parties in interest herein. Defendants are jointly charged by information with burglary. (Pen. Code, § 459.)

On September 4, 1969, at approximately 2 a.m., officers responded to a police radio call indicating a possible burglary in progress at a given residential location. No further details were contained in the broadcast. Arriving at the location, the officers went into the rear yard of the residence located immediately adjacent to the address given in the broadcast. They observed a light burning in a wooden shed structure about 25 yards distant from the rear porch of the house. With no sound being made, the light was turned off and defendant Rubio, a few feet away from the shed, was observed running to the side of the house. He appeared to be carrying a crowbar. He refused to halt at the officers' command. Shortly thereafter defendant Esparza was seen walking rapidly away from the area of the shed toward the house. He was detained and arrested at a point approximately 20 feet from the shed.

Defendant Gonzales then exited from the rear door of the house. He advised the officers that this was his house and asked what the problem was. He was informed by the officers that they were investigating a burglary call. Officer Guerra testified that at this time "Deputy Buckingham and myself went to the shed to investigate the—possible burglary." Without requesting permission from defendant Gonzales, the two officers then approached the shed, opened the closed door, shined a flashlight into it, and observed a safe inside the shed. A chisel was lodged alongside the door of the safe.

Officer Rasmussen testified to a conversation with defendant Gonzales in which he informed Gonzales that officers believed they had observed someone run into the house and that they would like to enter the house to see if they could find him. Defendant Gonzales replied that there were persons in the house and that the officers could come in if they wished. The officers entered the house and eventually found a three-foot crowbar located in the closet of a bedroom. Nothing had been said to the defendant Gonzales by the officers concerning their desire to search for a crowbar prior to the time he gave his consent. Various persons in the home were arrested and are now defendants in this action.

---

*Assigned by the Chairman of the Judicial Council.

At the outset of the hearing in respondent court, defendants requested the court to suppress People's Exhibits 2, 3, 4, and 5 and also those statements of the defendant Gonzales from which consent might be inferred. At the conclusion of the hearing the court granted the motion without specifying what was being suppressed. The briefs filed herein do not describe the exhibits. The hearing in respondent court was held de novo and as a result the transcript of the preliminary hearing containing a description of the exhibits was not presented to the respondent court nor to us. To eliminate the obvious confusion on review, we again urge that judges deciding such motions should expressly state for the record the precise evidence which they are suppressing. (*People* v. *Superior Court* (1969) 274 Cal.App.2d 228, 232 [78 Cal.Rptr. 830].)

We will assume however that the respondent court in granting defendants' motion suppressed the evidence as requested by the defendants at the outset of the hearing. Further description of the pertinent exhibits has been given to us by counsel at the time of the oral hearing herein. Exhibit 2 is a color photo of the safe. ■ Exhibits 3 and 4 are color photos of the alley adjoining the premises which are clearly admissible. Exhibit 5 is the crowbar found in the house.

It was stipulated at the hearing that the officers possessed no relevant search or arrest warrant.

■ We hold that Exhibit 2, the photograph of the safe, was properly suppressed. The shed is constitutionally protected under the Fourth Amendment against unlawful search and seizures. (*People* v. *Landry* (1969) 276 Cal.App.2d 370 [80 Cal.Rptr. 880]; *People* v. *Hobbs* (1969) 274 Cal.App.2d 402, 406 [79 Cal.Rptr. 281].) The People do not contend otherwise.

■ The legality of the search of the shed cannot be considered as one incidental to the arrest of a defendant some 20 feet away. (*Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].) Indeed, even prior to *Chimel* such a warrantless search would have been held illegal in this state. In *People* v. *Henry* (1967) 65 Cal.2d 842, at page 845 [56 Cal.Rptr. 485, 423 P.2d 557], the court quotes from *Chapman* v. *United States,* 365 U.S. 610, 613 [5 L.Ed.2d 828, 831, 81 S.Ct. 776]: "Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are . . . unlawful notwithstanding facts unquestionably showing probable cause." (*Vale* v. *Louisiana*

(1970) 399 U.S. 30 [26 L.Ed.2d 409, 90 S.Ct. 1969]; *Agnello* v. *United States,* 269 U.S. 20, 33 [70 L.Ed. 145, 149, 46 S.Ct. 4].)

■ The search cannot be validated upon an implied consent based upon the failure of defendant Gonzales to protest the entry into the shed. Such a claim is not well founded in either law or fact. Indeed the People have failed to cite a single case to sustain such a proposition. Further the record does not reveal any knowledge on defendant Gonzales' part that the officers intended to enter the shed. Implied consent has frequently been found in the overt conduct of a defendant which permits entry into the subject premises such as where the defendant stands back from a doorway or otherwise beckons or nods to officers who wish to enter. Such are not the facts of this case.

■ If the purpose of the entry was to effect an arrest, the facts support a finding that the officers did not comply with the requirements of section 844 of the Penal Code, either substantially or at all. The mere fact that they suspected that a burglar might still be in the shed does not necessarily excuse compliance. They never articulated a valid reason for noncompliance. (*People* v. *DeSantiago,* 71 Cal.2d 18, 29 [76 Cal.Rptr. 809, 453 P.2d 353].)

■ We further hold that Exhibit 5, the crowbar found in the house, was properly suppressed. At best, the consent given by defendant Gonzales to the officers authorized them to enter his premises to look for a man who might answer the description of the person seen running towards the house. It did not extend to a thorough search of the house, including its closets, to uncover a crowbar. There is no showing made by the People that the officers had ever advised Gonzales that such a crowbar might be in his premises or that they desired to look for it. ■ The authority to search pursuant to a consent must be limited to the scope of the consent. (*People* v. *Murillo* (1966) 241 Cal.App.2d 173, 177 [50 Cal.Rptr. 290]; *People* v. *Cruz* (1964) 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889]; *People* v. *Martinez* (1968) 259 Cal.App.2d Supp. 943, 945 [65 Cal.Rptr. 920].)

Defendants further contend that any consent given by defendant Gonzales was invalid because it was given after the officers had wrongfully searched the shed; thus the consent and subsequent search were part of the chain of illegality. People respond by stating that the record is not clear whether the search of the house occurred before or after the search of the shed. ■ However, the fact that the record does not clearly establish the legality of the search of the house amounts to a failure on the part of the People to meet its burden. When the People seek to justify a search

on the ground that consent was given, they have the burden of showing that a lawful consent was given. (*People* v. *Johnson* (1968) 68 Cal.2d 629, 632 [68 Cal.Rptr. 441, 440 P.2d 921]; *People* v. *Gorg* (1955) 45 Cal.2d 776, 782-783 [291 P.2d 469].)

It is a fair inference to be drawn from the evidence that the shed was searched first. The testimony of Officer Guerra as to his conduct after arrival supports the conclusion that he entered the shed shortly after coming on the premises.

█ This being a search without a warrant its authority must rest upon a valid consent first obtained. We feel there was substantial evidence to support respondent court's conclusion to the contrary.

Although defendants requested that the statements of defendant Gonzales from which the consent might be gained should be suppressed, it is clear that defendants are concerned with such statements only insofar as they led to the subsequent search. In view of our holding that the evidence of the crowbar obtained through the search of the home was properly suppressed, this issue becomes moot.

Let a peremptory writ issue commanding the Superior Court of the State of California for the County of Los Angeles to annul its order of March 30, 1970, suppressing evidence in case No. A-413034 entitled People of the State of California v. Amos Marshall Arketa, Victor Manuel Esparza, Gonzalo Santa Cruz Gonzales and Henry Rubio, only as to Exhibits 3 and 4.

Kaus, P. J., and Aiso, J., concurred.

A petition for a rehearing was denied August 20, 1970, and the opinion was modified to read as printed above.