STATE OF HAWAII, Plaintiff-Appellee, *v.* RONALD GILBERT AMORIN, Defendant-Appellant, and DENNIS G. ASUNCION, Defendant

NO. 6936

STATE OF HAWAII, Plaintiff-Appellee, *v.* RONALD GILBERT AMORIN, Defendant-Appellant

NOS. 6937 AND 6938

DECEMBER 21, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
RETIRED JUSTICE KOBAYASHI AND CIRCUIT
JUDGE LUM, ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY RICHARDSON, C.J.

The defendant-appellant, Ronald Gilbert Amorin, appeals from a judgment entered upon a jury conviction for the unauthorized control of a propelled vehicle, in violation of

HRS § 708-836 (1976). Prior to trial, the defendant moved to suppress as evidence his inculpatory statement made without *Miranda* warnings in response to police questioning after his arrest. The trial judge denied his motion on the ground that the defendant's incriminating statement was spontaneously and voluntarily made and therefore admissible notwithstanding the absence of the required warnings.

The defendant contends that the trial judge erred in denying his motion to suppress and that jury consideration of his illegally obtained confession violated his right against compulsory self-incrimination guaranteed by the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Hawaii Constitution.[1] We agree.

We reverse the judgment in Criminal No. 50065 and remand the case for new trial.

On the morning of January 7, 1977, Mr. Minoru Tsukada reported the theft of his 1965 Buick. Six days later, on January 13, 1977, Police Officer Robert Kupukaa pulled over a 1965 Buick for running a stop sign at an intersection. The defendant at the time was a passenger in the vehicle in question and Mr. Dennis Asuncion was driving.

Officer Kupukaa, before leaving his car, radioed in for an auto theft check. He then approached the driver of the detained vehicle and asked to see his license. When Mr. Asuncion responded that he did not have one, Officer Kupukaa returned to his car and was informed over the radio that the detained automobile had been reported stolen. Thereupon, he requested a back-up unit, ordered Mr. Asuncion and the defendant out of the car and placed them both under arrest for auto theft. To prevent their escape, the officer took the defendant and Mr. Asuncion to the rear of the detained vehicle and ordered them to stand next to each other. With the suspects so positioned, Officer Kupukaa began his questioning. Without first reciting *Miranda* warnings, the officer turned to the defendant and asked him if he knew who owned the detained car. The defendant shook his head indicating

---

[1] Formerly Hawaii Constitution, art. I, § 8, this provision was amended and renumbered in 1978.

that he did not. Officer Kupukaa then turned to Mr. Asuncion and again, without prior *Miranda* warnings, asked him if he knew who owned the vehicle.

At this point, the defendant stated, "Oh, he didn't steal the vehicle; I did." Officer Kupukaa asked no further questions of either the defendant or Mr. Asuncion.

The issue before us is whether the arresting officer's failure to recite proper *Miranda* warnings prior to questioning the defendant rendered inadmissible at trial his inculpatory statement uttered shortly after questioning had begun.

In *State v. Kalai*, 56 Haw. 366, 537 P.2d 8 (1975), we stated:

> Where an individual is being subjected to custodial interrogation, *he may not be asked any questions* without his first being advised of his right to remain silent, that anything he says can and will be used against him, that he has the right to have his attorney present, and that if he cannot afford counsel, one will be appointed for him prior to any interrogation. *Miranda v. Arizona*, 384 U.S. 436, 467-474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1971).

56 Haw. at 368, 537 P.2d at 11 (emphasis added). After being so informed, the defendant may waive these rights provided the waiver is made voluntarily, knowingly and intelligently.[2] *Miranda v. Arizona*, 384 U.S. at 444; *State v. Green*, 51 Haw. 260, 457 P.2d 505 (1969).

Unless and until such warnings and waiver are demonstrated by the prosecution, no statements obtained as a result of custodial interrogation may be used against the defendant either as direct evidence in the prosecutor's case in chief or to

---

[2] In the case at hand, the required warnings were not issued prior to police questioning at the scene of the defendant's arrest. The recitation of *Miranda* warnings is a minimum requirement to finding an intelligent, knowing and voluntary waiver by the defendant of his constitutional rights. Miranda v. Arizona, 384 U.S. at 468; State v. Green, 51 Haw. at 264. Thus, in the instant case, waiver may not be found. Our discussion therefore focuses on whether the defendant's inculpatory statement constituted a volunteered confession obtained independent of police interrogation.

impeach the defendant's credibility during rebuttal or cross-·
examination.[3] *State v. Santiago,* 53 Haw. at 266; *State v.
Pahio,* 58 Haw. 323, 568 P.2d 1200 (1977). This restriction
applies to a statement obtained during custodial interrogation
"even though the [defendant's] statement may in fact be
wholly voluntary." *Michigan v. Mosley,* 423 U.S.·96, 100, 96
S.Ct. 321, 46 L.Ed.2d 313 (1975). In *Michigan v. Tucker,* 417
U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), the Court
stated that "[*M*]*iranda,* for the first time, expressly declared
. . . that a defendant's statements might be excluded at trial
despite their voluntary character under traditional princi-
ples." 417 U.S. at 443. *See also State v. Gallegos,* 92 N.M.
336, 587 P.2d 1347 (1978); *State v. Ramirez,* 89 N.M. 635, 556
P.2d 43 (1976).

Despite the absence of *Miranda* warnings in this case, the
trial judge concluded that the defendant's statement was
admissible as a volunteered confession. We recognize that
volunteered confessions fall outside the scope of the *Miranda*
rule.[4] In *Miranda v. Arizona, supra,* the Court stated:

> The fundamental import of the privilege while an indivi-
> dual is in custody is not whether he is allowed to talk to the
> police without the benefit of warnings and counsel, but
> whether he can be interrogated. There is no· requirement
> that police stop a person who enters a police station and
> states that he wishes to confess to a crime, or a person
> who calls the police to offer a confession or any other

---

[3] In State v. Santiago, 53 Haw. 254, 492 P.2d 657 (1971), we held that the
"protections . . . enumerated in *Miranda* have an independent source in the Hawaii
Constitution's privilege against self-incrimination." 53 Haw. at 266, 492 P.2d at 664.

[4] Additional exceptions to the *Miranda* rule, not relevant here, have been
recognized by courts in other jurisdictions. These exceptions include: 1) statements
made by a suspect in response to police questioning following an arrest for a traffic
violation, Clay v. Riddle, 541 F.2d 456 (4th Cir. 1976); State v. Lewin, 163 N.J.
Super. 439, 395 A.2d 211 (1978), and 2) statements made in response to police
questioning seeking basic booking information, United States ex rel. Hines v. LaVal-
lee, 521 F.2d 1109 (2d Cir. 1975); cert. denied 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d
101 (1976), State v. Widell, _____ Minn. _____, 258 N.W.2d 795 (1977); Upshaw v.
State, 350 S.2d 1358 (Miss. 1977).

statement he desires to make. *Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.*

384 U.S. at 478 (footnote omitted) (emphasis added). Courts have since uniformly held that unsolicited, spontaneous statements made by a defendant *before any police questioning* and in the absence of any coercion are admissible. *Klamert v. Cupp*, 437 F.2d 1153 (9th Cir. 1970); *United States v. Trosper*, 450 F.2d 319 (5th Cir. 1971); *Phillips v. Attorney General of State of California*, 594 F.2d 1288 (9th Cir. 1979); *People v. Orr*, 38 Ill.2d 417, 231 N.E.2d 424 (1967); *People v. Bostic*, 97 Misc. 2d 1039, 412 N.Y.S. 2d 948 (1978). A volunteered confession is thus a confession made independent of any custodial interrogation.

Hence, the issue here is whether the defendant's statement constituted a confession made independent of any custodial interrogation. If so, *Miranda* warnings were not required and the defendant's statement was admissible as a volunteered confession. If not, the absence of *Miranda* warnings before questioning should have barred the use of the defendant's statement as evidence.

We find that Officer Kupukaa's questioning of the defendant constituted custodial interrogation. In *Miranda v. Arizona, supra,* the Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444; *see also State v. Kalai,* 56 Haw. at 368. It is undisputed that after his arrest, the defendant was in the custody of Officer Kupukaa. *State v. Patterson,* 59 Haw. 357, 581 P.2d 752 (1978). Further, the officer twice testified that he questioned the defendant about the ownership of the stopped vehicle while the defendant was in custody.[5]

---

[5] In State v. Pahio, 58 Haw. 323, 568 P.2d 1200 (1977), we stated that for purposes of *Miranda*, a law enforcement officer's statement is tantamount to a question if it asks for a response. In the case at hand, Officer Kupukaa testified at the pre-trial suppression hearing as follows:

Direct examination by the Prosecutor:

Q: Is that all you did?

Furthermore, we find that the defendant's inculpatory statement was a product of that custodial interrogation. In determining that the defendant's statement was made independent of custodial interrogation, the trial judge relied on the fact that the defendant did not utter his inculpatory remark immediately after he was questioned by the officer. Rather, the defendant's incriminating statement was made after the officer had turned his attention to Mr. Asuncion and had asked him if he knew who owned the detained car. It was at this time that the defendant confessed, "Oh, he didn't steal the vehicle; I did." Based on the timing and content of the defendant's remark, the trial judge concluded that the defendant's statement was not a result of the officer's questioning and therefore was volunteered; he thus ruled that the confession did not fall within the proscription of *Miranda* and permitted its use as evidence.

We differ from the conclusion of the trial judge. The record below clearly establishes that the defendant's incriminating statement was made during the course of custodial interrogation. At the start of his questioning, Officer Kupukaa knew that the detained automobile had been stolen. His inquiry as to the ownership of the car was directed at both suspects and appears to have been designed to elicit incriminating information. At the time of the interrogation, the defendant and Mr. Asuncion were standing two feet apart with their backs against the detained vehicle and facing the interrogating officer. The record indicates that there was no significant lapse of time between the officer's questioning of the defendant and the questioning of Mr. Asuncion; on the contrary, it appears that the same or a similar question was asked of one suspect and then promptly repeated by the officer to the other. The fact that the defendant's statement was not directly and specifically responsive to the exact

---

A: Well, while — after I placed them under arrest, I *asked* Mr. Amorin if he had any knowledge whose vehicle it was, at which time he didn't answer me. Transcript at 15 (emphasis added).

On cross-examination at trial, the officer reiterated that he had questioned the defendant about the ownership of the vehicle after his arrest. Trial transcript at 23.

question which preceded it does not undermine our finding that the defendant's statement was a product of custodial interrogation. The mandate of *Miranda* is unequivocal: before any questions are asked of an in-custody suspect, the required warnings must be given and unless and until such warnings are proven by the prosecution, no statements obtained as a result of custodial interrogation may be used.

The rationale supporting this mandate is that the in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. *Miranda v. Arizona*, 384 U.S. at 467; *State v. Santiago*, 53 Haw. at 262. These pressures continue to operate during the entire course of custodial interrogation. Therefore, the accused must be adequately and effectively apprised of his rights before the commencement of any in-custody interrogation. *Miranda* warnings, thus serve as a procedural safeguard to insure the accused a full opportunity to exercise the privilege against self-incrimination. In the case at hand, the officer's knowledge of wrongdoing, his repetitious in-custody questioning and the defendant's confined position created precisely the kind of coercive atmosphere that *Miranda* warnings were designed to overcome.

Having determined that custodial interrogation was instituted without prior *Miranda* warnings and that the defendant's inculpatory statement was the product of that interrogation, we hold that the arresting officer's failure to issue the required warnings rendered the statement obtained inadmissible at trial. The trial court's ruling permitting its use as evidence was thus in error.[6]

---

[6] In the present case, a second confession was obtained from the defendant approximately twenty-four hours after his initial inculpatory statement was made at the scene of his arrest. The record reveals that *Miranda* warnings preceded the interrogation that produced the second confession. We do not at this time decide whether the giving of *Miranda* warnings sufficiently purged the taint of the first illegally obtained confession to permit the introduction of the second. *See* Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Wong Sun v. United

Where there exists a reasonable possibility that a constitutional error of the trial court contributed to the conviction of the defendant, the error necessitates reversal. *State v. Napeahi*, 57 Haw. 365, 556 P.2d 569 (1976); *State v. Smith*, 59 Haw. 565, 583 P.2d 347 (1978); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). In the instant case, we find that the trial court's error in admitting the defendant's illegally obtained confession infringed upon the defendant's constitutional right against self-incrimination protected by the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Hawaii Constitution. We find that the error raised the reasonable possibility of having contributed to the conviction below; we cannot say that it was harmless beyond a reasonable doubt.

The judgment in Criminal No. 50065 is therefore reversed and the case remanded for new trial.

We have considered the issues raised in Criminal Nos. 48982 and 50278 consolidated in this appeal and find them to be without merit. We therefore affirm without discussion the judgment of conviction in Criminal Nos. 48982 and 50278 respectively.

*Raymond E. Gurczynski*, Deputy Public Defender *(Donald K. Tsukiyama*, Public Defender) for Defendant-Appellant.

*Sandra L. Alexander*, Deputy Prosecuting Attorney *(Togo Nakagawa*, Prosecuting Attorney) for Plaintiff-Appellee.

---

States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We note only that on remand the prosecution has the burden of proving that the second confession resulted from an intervening act of free will independent of any element of coerciveness due to the prior illegality. *See* Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968); Commonwealth v. Lowenberg, 481 Pa. 244, 392 A.2d 1274 (1978).